UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-80161-CIV-HURLEY/HOPKINS

**ERIK SANTOS, et al.,**

    Plaintiffs,

v.

**CROWN EQUIPMENT CORP.,**

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the court upon defendant's motion for summary judgment [DE # 18]. For the reasons given below, the court will deny defendant's motion.

### BACKGROUND

This is a product liability and negligence case arising out of personal injuries suffered by plaintiff Erik Santos[1] while operating a forklift manufactured by defendant Crown Equipment Corp. As required on a motion for summary judgment, the facts described below have been viewed in the light most favorable to the plaintiff as the non-moving party. *See McCullough v. Antolini*, 559 F.3d 1201, 1202 (11th Cir. 2009).

Santos was employed by Sysco Food Services in Riviera Beach, Florida. On January 14, 2005, Santos was operating the Crown forklift when he suffered serious injury from the collision of his forklift with another forklift parked on the warehouse floor. The parked forklift's raised forks entered the operator compartment of Santos' forklift and made contact with Santos' left leg. As a

---

[1] Beatrice C. Santos is also a plaintiff in this action. In this order, "Santos" refers to Erik Santos unless otherwise indicated.

result of the injury, Santos' left leg was amputated.

Santos and his wife, Beatrice C. Santos, filed suit against Crown in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida on December 31, 2007. The complaint alleges Crown's strict liability on three theories (manufacturing defect, design defect, and defective warning), as well as three claims of negligence against Crown (negligent manufacture, negligent design, and negligent warnings). The complaint also includes a claim by Beatrice Santos for loss of consortium. Crown was served with process on January 25, 2008, and removed the action to this court on February 15, 2008.

## JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.

Venue is proper in this court pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events giving rise to the claim occurred in the Southern District of Florida.

## DISCUSSION

### A.  *Standard on Motion for Summary Judgment*

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in

the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *See Celotex*, 477 U.S. at 323; *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

B.   *Defendant's Motion for Summary Judgment*

Crown argues that summary judgment in its favor must be granted on Santos' strict liability and negligence claims relating to manufacturing defect and design defect[2] because they are

---

[2] The motion is not directed to Santos' defective warning and negligent warning claims, or to Beatrice Santos' claim for loss of consortium.

preempted by federal law.

"The well-worn taxonomy of preemption doctrine identifies three categories: (1) express preemption; (2) field preemption; and (3) conflict preemption." *Florida State Conference of NAACP v. Browning*, 522 F.3d 1153, 1167 (11th Cir. 2008). An agency regulation with the force of law is to be given preemptive effect, *see Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861 (2000); and state law causes of action are subject to preemption just as state regulations are. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521-22 (1992).

Crown does not argue that Santos' claims are expressly preempted, or that Congress has decided that federal law alone should occupy the entire field of workplace-safety regulation. Rather, Crown, relies on the doctrine of conflict preemption. "Conflict preemption occurs either when it is physically impossible to comply with both the federal and the state laws or when the state law stands as an obstacle to the objective of the federal law." *Browning*, 522 F.3d at 1167. There must be an "outright or actual conflict between federal and state law." *National Ass'n of State Utility Consumer Advocates v. FCC*, 457 F.3d 1238, 1252 (11th Cir. 2006) (quoting *Louisiana Public Service Comm'n v. FCC*, 466 U.S. 355, 368 (1986)).

Santos' defective design and defective manufacture claims rest primarily on his contention that the forklift driven by Santos should have included an enclosed operator compartment. According to Crown, these claims are preempted by regulations promulgated under the Occupational Safety and Health Act, 29 U.S.C. § 655(a), which empowers the Secretary of Labor to "by rule promulgate as an occupational safety or health standard any national consensus standard, and any established Federal standard . . . which assures the greatest protection of the safety or health or the

4

affected employees."

Pursuant to that section, the Labor Department enacted a rule requiring "powered industrial trucks" to "meet the design and construction requirements for powered industrial trucks established in the 'American National Standard for Powered Industrial Trucks, Part II, ANSI B56.1-1969', which is incorporated by reference as specified in [29 C.F.R. § 1910.6] . . . ." 29 C.F.R. 1910.178(a)(2). The referenced ANSI standard provides: "Operator enclosures are not recommended because rapid and unobstructed ingress or egress for the operator is considered more desirable." ANSI/ASME B56.1-1969 § 424. Thus, the ANSI standard, which has been adopted and incorporated by reference into the Labor Department's binding regulations, disapproves the inclusion of operator enclosures with industrial trucks such as the one being operated by Santos at the time of his injury. Crown argues that Santos' state-law claims are therefore preempted.

This argument falls short for several reasons. First, as noted above, conflict preemption arises in only two circumstances: (1) when it is impossible to comply with both federal and state law; and (2) when state law stands as an obstacle to achieving the objectives of the federal law. *See Cliff v. Payco General American Credits, Inc.*, 363 F.3d 1113, 1122 (2004) (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000)). There is no direct conflict between the alternative operator-enclosure design put forth by Santos and the federal regulations, nor do the state law causes of action asserted by Santos pose an obstacle to OSHA's objectives.

29 C.F.R. § 1910.178(a)(2) incorporates by reference ANSI B56.1-1969 "as specified in § 1910.6, except for vehicles intended primarily for earth moving or over-the-road hauling." Section 1910.6 in turn includes the following in relation to standards incorporated by reference: "Only the

5

mandatory provisions (i.e., provisions containing the word 'shall' or other mandatory language) of standards incorporated by reference are adopted as standards under the Occupational Health and Safety Act." 29 C.F.R. § 1910.6(a)(1). ANSI B56.1-1969 does not use mandatory language in regard to operator enclosures; it says only that operator enclosures are "not recommended." Under § 1910.6, that precatory language is not incorporated into the federal regulation when the standard as a whole is incorporated by reference. Thus, the recommendation against operator enclosures is not part of the federal regulation incorporated by reference into § 1910.178(a)(2) and can have no preemptive effect.

Second, the Occupational Safety and Health Act includes a "savings clause" that preserves state-law causes of action that might otherwise be preempted. It provides:

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment.

29 U.S.C. § 653(b)(4). The savings clause does not save tort causes of action that actually conflict with federal regulations. *See Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 869-70 (2000). However, it has been held to save state-law tort causes of action from preemption by federal regulations that, like the one at issue in this case, neither require nor forbid particular safety features. *See Lindsey v. Caterpillar, Inc.*, 480 F.3d 202, 209 (3d Cir. 2007); *Pedraza v. Shell Oil Co.*, 942 F.2d 48, 53 (1st Cir. 1991); *cf. Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 829 (8th Cir. 2009) (noting that although § 653(b)(4) does not itself create a private cause of action, it "prevents federal preemption of state tort law"). The strict liability and negligence claims asserted

by Santos fall squarely within the protected category carved out by § 653(b)(4), and therefore are not preempted. Many district courts confronted with similar claims have reached the same conclusion. *See In re Welding Fume Products Liability Litigation*, 364 F. Supp. 2d 669, 686 (N. D. Ohio 2005) (collecting cases).

Third, the case relied on by Crown, *Arnoldy v. Forklift, L.P.*, 927 A.2d 257 (Pa. Sup. Ct. 2007) is not binding on this court and is in any event distinguishable. *Arnoldy* held that tort claims against the manufacturer of a forklift for failure to include an adequate back-up warning alarm system were preempted by ANSI B56.1-1969. But the relevant portion of the standard in that case *required* the forklift manufacturer, at the user's request, to "equip the trucks or tractors with visual warning devices such as lights or blinkers." Here, there is no mandatory requirement. As discussed above, 29 C.F.R. § 1910.6 makes clear that only standards using mandatory language are adopted as federal regulations. Thus, the recommendation against operator enclosures does not preempt a common law action that asserts the lack of an operator enclosure as a manufacturing or design defect.

Nor is the regulation in this case analogous to the one given preemptive effect in *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861 (2000). In *Geier*, the Supreme Court held that a common law suit against a car manufacturer for failure to equip a vehicle with an airbag was preempted by a Department of Transportation regulation that "deliberately provided the manufacturer with a range of choices among different passive restraint devices." *Id.* at 875. The agency in *Geier* enacted regulations "making clear that airbags were one of several equally acceptable devices and that it neither favored nor expected the introduction of airbag systems" and including "an express provision permitting compliance" through the use of safety devices other than airbags. *Id.* (citations, alterations, and internal quotations omitted). In light of the federal regulations

7

expressly permitting compliance by alternative routes, the Court held that a suit seeking to hold a car manufacturer liable for failing to equip a car with an airbag was preempted. *Id.* at 881.

*Geier* does not control this case because § 1910.178 does not expressly permit a forklift manufacturer to sell a forklift without an operator enclosure. Thus, the analogy drawn by Crown between its manufacture and sale of forklifts without operator enclosures and the production of cars without airbags in *Geier* is inapt. In selling the subject forklift, Crown did not select one of several design options that had been approved by the relevant agency as compliant with the applicable standards. It is true that ANSI B56.1-1969 expresses doubt regarding operator enclosures, but that alone does not transform the situation into one analogous to *Geier*, especially because, as noted above, that doubt was not incorporated into the federal regulation.

Crown argues that Santos' tort claims are preempted because under the relevant regulations Crown was permitted to manufacture a forklift without an operator enclosure. But the fact that applicable federal regulations neither prohibit nor require the inclusion of an operator enclosure does not mean that Crown's decision not to include one constituted, as in *Geier*, an election of an agency-approved option immune from any standards potentially imposed by state tort law. If that were the case – if all of the manufacturer's decisions regarding design elements not addressed in federal regulations were considered in this sense "federally approved" – then *all* state-law tort claims against OSHA-compliant vehicles would be preempted. Effectively, this would mean that all OSHA regulations are intended to "occupy the field" and that all state-law claims in areas within OSHA's jurisdiction are therefore subject to implied preemption. This is not so. *See, e.g.*, *Environmental Encapsulating Corp. v. City of New York*, 855 F.2d 48, 58-59 (2d Cir. 1988).

8

Order Denying Defendant's Motion for Summary Judgment
Santos et al. v. Crown Equipment Corp.
Case No. 08-80161-CIV-HURLEY/HOPKINS

Finally, the court is guided by the Supreme Court's recent decision in *Wyeth v. Levine*, 129 S.Ct. 1187 (2009). Although *Wyeth* was concerned with claims related to an allegedly inadequate pharmaceutical warning label, and Crown's motion for summary judgment is not directed to Santos' defective-warning claims, *Wyeth* is nonetheless generally relevant in that it reaffirmed the presumption that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* at 1194-95 (internal quotations omitted). Moreover, *Wyeth* held that the inadequate-warning claim was not preempted even though the FDA explicitly approved – in fact, mandated – the particular warning language to be included on the label. *Id.* at 1192. It follows *a fortiori* that there is no preemption in a case where, as here, the relevant federal agency has not addressed the alleged product defect at all.

### CONCLUSION

For the reasons stated above, it is hereby **ORDERED** and **ADJUDGED** that:

1.  Defendant's motion for summary judgment [DE # 18] is **DENIED**.

**DONE** and **SIGNED** in Chambers in West Palm Beach, Florida, this 21st day of April, 2009.

_____
Daniel T. K. Hurley
U.S. District Judge

*Copies provided to counsel of record*